IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFERY BOGGS,<br><br>              Plaintiff,<br><br>   v.<br><br><br><br>CNX MIDSTREAM PARTNERS LP, CNX MIDSTREAM GP LLC, NICHOLAS J. DEIULIIS, RAYMOND T. BETLER, CHAD A. GRIFFITH, JOHN E. JACKSON, JOHN A. MAHER, DONALD W. RUSH, and HAYLEY F. SCOTT,<br><br>             Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeffery Boggs ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by CNX Midstream Partners LP ("CNX Midstream" or the "Partnership") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, unitholder communications, and postings on the Partnership's website concerning the Partnership's public

statements; and (d) review of other publicly available information concerning CNX Midstream and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against CNX Midstream and the Partnership's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Partnership to CNX Resources Corporation ("Parent"), and CNX Resources Holdings LLC ("Merger Sub," and collectively with Parent, "CNX,") (the "Proposed Transaction").

2. On July 27, 2020, the Partnership announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with CNX. Pursuant to the terms of the Merger Agreement a subsidiary of CNX will acquire all of the outstanding common units of CNX Midstream at approximately 0.88 shares of CNX common stock (the "Merger Consideration").

3. On August 28, 2020, in order to convince the Partnership's unitholders to consent in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against CNX Midstream and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to CNX Midstream unitholders before special meeting of unitholders or, in the event the Proposed

Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits unitholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of CNX Midstream units.

9. Defendant CNX Midstream is incorporated under the laws of Delaware and has its principal executive offices located at 1000 CONSOL Energy Drive, Canonsburg, PA 15317. The Partnership's common units trade on the New York Stock Exchange under the symbol "CNXM."

10. Defendant CNX Midstream GP LLC ("CNX GP") is the General Partner of the Partnership.

11. Defendant Nicholas DeIuliis ("DeIuliis") is and has been a member of the Board at all times during the relevant time period. Defendant DeIuliis also serves as the Chief Executive Officer ("CEO") of CNX GP and Chairman of the Board, as well as President, Director, and CEO of CNX.

12. Defendant Chad A. Griffith ("Griffith") is and has been a member of the Board at all times during the relevant time period. Defendant Griffith also serves as the Chief Operating Officer and President of CNX GP.

13. Defendant Raymond T. Betler ("Betler") is and has been a member of the Board at all times during the relevant time period.

14. Defendant John E. Jackson ("Jackson") is and has been a member of the Board at all times during the relevant time period.

15. Defendant John A. Maher ("Maher") is and has been a member of the Board at all times during the relevant time period.

16. Defendant Donald W. Rush ("Rush") is and has been a member of the Board at all times during the relevant time period. Defendant Rush also serves as the Chief Financial Officer ("CFO") of CNX GP.

17. Defendant Hayley F. Scott ("Scott") is and has been a member of the Board at all times during the relevant time period.

18. Defendants DeIuliis, Griffith, Betler, Jackson, Maher, Rush, and Scott are collectively referred to herein as the "Individual Defendants."

19. The Individual Defendants, along with Defendant CNX Midstream and CNX GP are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Partnership**

20.     CNX Midstream is a growth-oriented master limited partnership ("MLP") focused on the ownership, operation, development and acquisition of midstream energy infrastructure in the Appalachian Basin. CNX Midstream currently provide midstream services to its customers' production in the Marcellus Shale and Utica Shale in Pennsylvania and West Virginia under long-term, fixed-fee contracts. CNX Midstream's assets include natural gas gathering pipelines and compression and dehydration facilities, as well as condensate gathering, collection, separation and stabilization facilities. CNX Midstream is managed by CNX GP, a wholly-owned subsidiary of CNX Gathering. CNX Gathering is a wholly owned subsidiary of CNX.

21.     CNX Midstream generates substantially all of its revenues under long-term, fixed-fee gathering agreements with each of CNX and HG Energy II Appalachia, LLC that are intended to mitigate its direct commodity price exposure and enhance the stability of its cash flows. The gathering agreements currently include acreage dedications of approximately 363,000 aggregate net acres, comprised of approximately 262,000 Marcellus acres and approximately 101,000 Utica acres.

**The Partnership Announces the Proposed Transaction**

22.     On July 27, 2020, the Partnership jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> PITTSBURGH, July 27, 2020 /PRNewswire/ -- CNX Resources Corporation (NYSE: CNX) ("CNX") and CNX Midstream Partners LP (NYSE: CNXM) ("CNX Midstream" or the "Partnership") today announced that they have entered into a definitive merger agreement pursuant to which CNX will acquire all of the outstanding common units of CNX Midstream that it does not already own in exchange for CNX common stock valued at approximately $357 million, based on the most recent closing price of CNX common stock.

Under the merger agreement, each outstanding common unit of CNX Midstream that CNX does not already own will be converted into 0.88 shares of CNX common stock, representing a 15% premium to the average exchange ratio during the 30 trading days ended July 24, 2020.

"We believe that this take-in transaction of CNX Midstream Partners is the optimal solution for all relevant stakeholders given the near- and long-term view of the MLP market," commented Nicholas J. DeIuliis, president and CEO. "We expect the combined entity to be an even stronger company with a lower cost of capital and increased investable free cash flow."

Don W. Rush, CFO, added, "Following the completion of the transaction, CNX is expected to be the lowest cost producer in the Appalachian Basin, with increased operational flexibility and basin leading operational metrics. Stockholders of CNX and unitholders of CNX Midstream are expected to benefit from a combination of synergies including improved equity trading liquidity, enhanced financial flexibility to optimize cash flows, and an improved credit profile."

**Additional Transaction Terms and Details**

Pursuant to the terms of the merger agreement, CNX will acquire all of the approximately 42.1 million outstanding common units of CNX Midstream that it does not already own at a fixed exchange ratio of 0.88 shares of CNX common stock for each publicly held common unit of CNX Midstream. CNX Midstream common units will no longer be publicly traded after the transaction. In aggregate, CNX will issue approximately 37 million shares in connection with the proposed transaction, representing approximately 17 percent of the total shares outstanding of the pro forma combined entity.

Following completion of the transaction, all senior notes of CNX Midstream will remain outstanding and no additional payments will be made to CNX in connection with the elimination of the incentive distribution rights transaction from January of this year. The transaction terms were negotiated, reviewed and approved by the Conflicts Committee of the CNXM Board and approved by the CNXM Board. The CNX Midstream Conflicts Committee is composed of the independent members of the CNXM Board. The Board of Directors of CNX also approved the merger agreement.

**Conditions to Closing**

Subject to customary approvals and conditions, the transaction is expected to close in the fourth quarter of 2020. The transaction is subject to majority approval by CNX Midstream common unitholders and the effectiveness of a

registration statement related to the issuance of the new CNX shares to CNX Midstream's unitholders. Pursuant to a support agreement entered into in connection with the transaction, CNX has agreed to vote the CNXM common units that it owns in favor of the transaction. CNX currently owns approximately 53.1% of the outstanding common units.

**Advisors**

Citi is acting as exclusive financial advisor and Latham & Watkins LLP is acting as legal advisor to CNX. Intrepid Partners, LLC is acting as exclusive financial advisor and Baker Botts L.L.P. is acting as legal advisor to the Conflicts Committee of the CNXM Board.

### FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

23. On August 28, 2020, the Partnership authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Partnership's unitholders to support the Proposed Transaction.

24. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Partnership's unitholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Partnership's unitholders to make informed decisions regarding the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Partnership's Financial Projections

25. The Proxy Statement contains projections prepared by the Partnership's and CNX's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such

projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28. Specifically, with respect to the Partnership's projections, the Partnership must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Distributable Cash Flow; (iii) Levered Free Cash Flow; and (iv) Levered Free Cash Flow per Fully Diluted Unit Outstanding.

29. With respect to CNX's management's projections, the following line item projections for the financial measures that were used to calculate the non-GAAP measures must be disclosed, including: (i) Adjusted EBITDAX; (ii) Levered Free Cash Flow; (iii) Levered Free Cash Flow plus proportionate interest in CNXM Levered Free Cash Flow; and (iv) Levered Free Cash Flow per Fully Diluted Share Outstanding.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

30. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide unitholders with a better understanding of the analyses performed by the Partnership's financial advisor in support of its opinion.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Intrepid's Financial Opinion

31. The Proxy Statement contains the financial analyses and opinion of Intrepid Partners, LLC ("Intrepid") concerning the Proposed Transaction, but fails to provide material information concerning such.

32. With respect to Intrepid's *CNXM Comparable Company Trading Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed by Intrepid in its analysis.

33. With respect to Intrepid's *CNXM Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions used by Intrepid in calculating the weighted average cost of capital range of 8.5% to 9.4%; and (ii) the individual inputs and assumptions used by Intrepid in selecting the range of terminal EBIDTA multiples of 6.0x to 8.0x.

34. With respect to Intrepid's *CNXM Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions selected by Intrepid for its analysis.

35. With respect to Intrepid's *CNX Comparable Company Trading Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed by Intrepid in its analysis.

36. With respect to Intrepid's *CNX Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions used by Intrepid in calculating the weighted average cost of capital range of 6.8% to 7.7%; and (ii) the individual inputs and assumptions used by Intrepid in selecting the range of terminal EBIDTA multiples of 5.0x to 6.5x.

37. When a banker's endorsement of the fairness of a transaction is touted to unitholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides unitholders with a basis to project the future financial performance of a Partnership and allows unitholders to better understand the financial analyses performed by the Partnership's financial advisor in support of its fairness opinion.

38. Without the above described information, the Partnership's unitholders are unable to make an informed decision concerning the Proposed Transactions. Accordingly, in order to provide unitholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Defendants have issued the Proxy Statement with the intention of soliciting unitholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Partnership.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information

to unitholders although they could have done so without extraordinary effort.

44. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

45. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

46. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Partnership's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Partnership's financial projections.

47. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to make an informed decision on the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the meeting of the Partnership's unitholders.

48. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of CNX Midstream within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of CNX Midstream, and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

53. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.  Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 2, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*